# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARVIN HUDGINS,

    *Plaintiff*,

*v.*                   CASE NO. 13-cv-11602

COMMISSIONER OF         DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 12) be **DENIED**, that Defendant's Motion for Summary Judgment (doc. 16) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB), and supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 12, 16, 17.)

_____

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability, DIB and SSI with a protective filing date of January 30, 2009, alleging that he became unable to work on December 15, 2008. (Transcript, Doc. 7 at 15, 160-70, 238.) The claims were denied at the initial administrative stages. (Tr. at 85, 86, 99-106.)

On August 27, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Martha Gasparovich, who considered the application for benefits *de novo*. (Tr. at 15, 33.) In a decision dated December 9, 2010, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 15, 2008, through the date of the ALJ's decision. (Tr. at 23.) Plaintiff requested Appeals Council review of this decision. (Tr. at 8-11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 5, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On April 9, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health*

*and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted

by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB and SSI is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a)(DIB), 416.905(a)(SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

4

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through September 30, 2012, and had not engaged in substantial gainful activity since December 15, 2008. (Tr. at 17.) At step two, the ALJ found that Plaintiff's asthma, obstructive sleep apnea, morbid obesity, pulmonary hypertension, narcolepsy and carpal tunnel syndrome were "severe" within the meaning of the second sequential step. (Tr. at 17-18.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to stand for up to two hours in an eight-hour workday with unlimited sitting; lift no more than 10 pounds;

perform no pushing or pulling of levers or pedals with any of the extremities; only occasionally kneel, crouch, crawl, bend, climb or squat; reach for no more than 2/3 of the workday activity; and would need a clean air environment free from concentrated levels of dust, fumes, chemicals, or other airborne irritants. (Tr. at 18.)

 At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 22.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act. (Tr. at 22-23.)

### E.    Administrative Record

Plaintiff was 32 years old at the time of the ALJ hearing. (Tr. at 41.) Plaintiff is 6 foot 6 inches tall and weighed 405 pounds as of September 16, 2010. (Tr. at 474.) Plaintiff obtained a GED and a certificate in building apartment maintenance. (Tr. at 42.) Plaintiff has past work as a hi-lo driver and home care provider. (Tr. at 43-44.) Plaintiff lives with his aunt. (Tr. at 50.)

Plaintiff testified that he continues to work as a home health care worker for twenty hours per week taking care of his mother. (Tr. at 44-45, 50.) He has maintained the position for the past nine years and is paid by the State of Michigan. (Tr. at 45.) In that position he sweeps floors, washes clothes, makes sure she has her medications, sometimes grocery shops, and warms her food in the microwave. (Tr. at 44-45.) Plaintiff does not believe he is able to work at any other job due to his sleep apnea, falling asleep at different times, swelling and pain in his legs, dropping items and his asthma. (Tr. at 46.) Upon questioning by Plaintiff's attorney, Plaintiff clarified that his sister is usually present when he cares for his mother, he takes a 10-15 minute nap every hour

or whenever he needs one, and he sits and elevates his feet as needed. (Tr. at 54.) He alleges that approximately twice a week his legs become so swollen that he has to stay in bed all day and his sister or someone else will care for his mother. (Tr. at 56.)

Plaintiff testified that his medications are an albuterol inhaler, Lasix, his CPAP machine for sleeping and aspirin for blood pressure. (Tr. at 47-48.) Plaintiff testified that he can stand for ten minutes before his legs swell or he falls asleep and sit for twenty minutes with his legs propped up, otherwise they swell. (Tr. at 48.) He testified that he can walk the length of three or four houses. (Tr. at 49.) He explained that he spends his days working after he awakens, but "spaces" his day out with several breaks. (Tr. at 49.) He described that he has difficulty sleeping and half the time he cannot sleep; he wakes up "choking" because he cannot breath in his sleep, even when using his CPAP machine. (Tr. at 51.) He testified that he experiences shortness of breath five to six times over a two hour period or 30 times over an eight hour period. (Tr. at 52.) He estimated that he uses his inhaler seven to eight times per day, takes a breathing treatment twice per day for approximately 10-15 minutes and takes a twenty minute break approximately twice per day. (Tr. at 59.)

 Plaintiff testified that he falls asleep three or four times per hour. (Tr. at 58.) He testified that he falls asleep leaning against a wall or watching television, fell asleep while driving and had a car accident, fell asleep while cooking and burned "down the kitchen," and fell asleep on the bus and was robbed. (Tr. at 53-54, 253.) He testified that he had lost his license and reported that he stopped driving due to impairments. (Tr. at 50, 53, 287.)

The medical records go back as far as 2005 showing treatment for asthma and use of a CPAP machine. (Tr. 339.) Records from 2006 show multiple reports to the hospital for shortness

of breath and asthma-related complaints. (Tr. 302) April 2006 chest x-rays were normal and an ultrasound of the bilateral lower extremity veins showed no evidence of deep vein thrombosis. (Tr. at 312-14.) The records and testimony also show that asthma exacerbations or attacks requiring medical treatment occurred when Plaintiff was being arrested or in prison and was not provided with his asthma medication or CPAP machine. (Tr. at 46-47.) Hospital admissions occurred between September 15 and 18, 2006, when Plaintiff was brought to the hospital in police custody with complaints that he needed "his breathing machine" and did not have his inhaler. (Tr. at 343-51.) The emergency unit provided breathing treatments and an albuterol inhaler. He was diagnosed with a history of asthma and obstructive sleep apnea. (Tr. at 349.) Pitting edema of 3+ in the lower extremities was also noted. (Tr. at 350.) Similarly, in March and May 2007 Plaintiff sought emergency treatment while in police custody, complaining of shortness of breath following his arrest and while sleeping, respectively. (Tr. at 381-90.) He was treated with albuterol inhaler and discharged to police custody. (*Id.*) Plaintiff was hospitalized from December 6 through December 12, 2007 for respiratory failure secondary to acute exacerbation of asthma plus sleep apnea. (Tr. at 391-445.) He required intubation and was admitted to the intensive care unit. (Tr. at 392.) At a follow-up appointment on December 14, 2007 it was reported that Plaintiff had no symptoms. (Tr. at 450; *see also* tr. at 446.)

At a May 13, 2008 consultative examination Plaintiff had a positive Tinel's sign on the right and negative Phalen's bilaterally over the wrists. Sensation was "grossly" intact and he had "normal fine hand coordination." (Tr. at 453.) Plaintiff was diagnosed with carpal tunnel syndrome on the right, noting normal strength and no muscle wasting. (Tr. at 453.) Other diagnoses were morbid obesity, severe sleep apnea, a history of narcolepsy and poorly controlled

asthma. (*Id.*) He was diagnosed with a history of severe respiratory conditions including asthma, sleep apnea, narcolepsy and obesity at a September 16, 2010 consultative examination. (Tr. 473-80.)

The vocational expert ("VE") testified that Plaintiff's work as a care giver was semi-skilled, SVP 3[3] and as a hi-lo driver was semi-skilled, SVP 3, both at a medium exertional level per the Dictionary of Occupational Titles (DOT). (Tr. at 61.) At the hearing, the ALJ asked the vocational expert ("VE") to consider an individual of the Plaintiff's age, education and past work experience with the following limitations:

> [A]n inability to stand and walk more than six hours in an eight-hour day, but could sit up to eight six (sic) hours in an eight-hour day. Lifting is limited to 20 pounds occasionally and ten pounds frequently. There could be no pushing or pulling of levers or pedals with any of the extremities. Kneeling, crouching, crawling, bending, climbing, squatting would be limited to occasionally. Reaching would be limited to no more than two-thirds of the workday activity. The individual would need to be in a clean air environment with no concentrated levels of dust, fumes, chemicals or other airborne irritants. (Tr. at 62.)

The VE testified that such an individual could not perform Plaintiff's past work. (*Id.*) The VE testified that there are sedentary, unskilled jobs which such an individual could perform. (Tr. at 63.) The jobs within the region defined as "Southeast Michigan" included: Surveillance system monitor (500 positions); order clerk (1,000 positions); information clerk (4,000 positions); and assembly positions (1,500 positions). (Tr. at 63.)

The ALJ then asked the VE to consider the same individual as the prior hypothetical with the additional limitations that:

---

[3]"'SVP' [specific vocational preparation] ratings are used to classify work as unskilled (SVP of 1-2, requiring 30 days or less to learn), semi-skilled (SVP of 3-4, requiring 30-90 days to learn), and skilled (SVP of 5-9, requiring 90 days or more to learn)." *Hilliard v. Chater*, 1997 WL 403504 *3 n.1 (N.D.Ill. 1997). The Dictionary of Occupational Titles lists an "SVP level for each described occupation." *Waters v. Comm'r of Soc. Sec.*, 2011 WL 1430567 *5 (N.D.Ohio 2011).

[T]he person was limited to two hours of standing out of eight and lifting would be limited to ten pounds. (Tr. at 63.)

The VE testified that such additional limitation would not affect the individual's ability to perform any of the jobs given in response to the first hypothetical question. (Tr. at 63.)

Finally, the ALJ asked in addition to the prior two hypothetical questions:

[T]hat there was a need to lie down and rest throughout the day (sic) several times throughout the day for periods of 15 to 20 minutes at the least at a time, and these would be unscheduled breaks, would there be any work that exists in the national economy such an individual could perform? (Tr. at 63-64.)

The VE testified that there would not be jobs for such an individual. (Tr. at 64.) Plaintiff's attorney followed up with questions to the VE. (Tr. at 64-67.) The VE testified that her testimony was consistent with the DOT. (Tr. at 64.)

## F.    Analysis

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) Plaintiff's argues that the ALJ's step three determination, the credibility determination and the RFC are not supported by substantial evidence. If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports a different conclusion. *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen,* 800 F.2d at 545. The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform a limited range of sedentary work and the ALJ properly explained her findings. The medical evidence as a whole did not provide objective support for Plaintiff's allegations of

severe and totally disabling functional limitations stemming from his impairments, symptoms or medications.

In light of multiple prior applications and associated record evidence, both Plaintiff and Defendant have raised different issues as to the relevance of evidence pre-dating the current application and alleged onset date. (Doc. 16 at 12, 17 at 2, 3.) Plaintiff's current application, dated January 30, 2009, alleges disability since December 15, 2008. The relevant time period at issue for adjudication is from December 15, 2008[4] through the date of the ALJ's decision. In this instance, Plaintiff's date last insured, September 30, 2012, post-dates the ALJ's decision and is not an issue. Evidence pre-dating the alleged onset date is considered to the extent that it is medical history relevant to Plaintiff's condition. While the ALJ properly considers such evidence, she weighs it against evidence from the relevant period. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("Although medical history is relevant to a claimant's condition, [claimant's] medical history should not be given more weight than that of a doctor observing plaintiff during the relevant period of disability.").

### 1.    Obesity

Plaintiff argues that the ALJ failed to consider his obesity pursuant to Social Security Ruling (SSR) 02-1p at step 3 in deciding whether Plaintiff met or equaled a Listing and in determining Plaintiff's RFC. (Doc. 12 at 9.) At step three, Plaintiff argues that the ALJ failed to properly consider his obesity in connection with Listings 3.00 and 4.00. *See* 20 C.F.R. 404, Subpt. P, App. 1 §§ 3.00, 4.00.

---

[4] Plaintiff is not eligible to receive SSI benefits prior to the date on which he filed his SSI application. 20 C.F.R. § 416.335; *Nicely v. Comm'r of Soc. Sec.*, 2013 WL 1182223 (N.D.Ohio 2013)(citing SSR 83-20, 1983 WL 31249 *1). Plaintiff also has a DIB claim, to which his alleged onset date is relevant.

In order to establish disability under the Listings, each requirement of the applicable Listing must be met. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d). If an impairment does not meet the criteria of the Listing, it may still medically equal the Listing if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Plaintiff relies on Listing 3.00(I)(1) which provides that the

[C]ombined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity. 20 C.F.R. § 404, Subpt. P, App. 1 § 3.00(I)(1).

Similarly, Listing 4.00(I)(1) provides that the

[C]ombined effects of obesity with cardiovascular impairments can be greater than the effects of each of the impairments considered separately. We must consider any additional and cumulative effects of obesity when we determine whether you have a severe cardiovascular impairment or a listing-level cardiovascular impairment (or a combination of impairments that medically equals the severity of a listed impairment), and when we assess your residual functional capacity. 20 C.F.R. § 404, Subpt. P, App. 1 § 4.00(I)(1).

Plaintiff alleges that the ALJ "simply mentions obesity in passing" without considering its effect on the Listing evaluation or the RFC. (Doc. 12 at 9.) A reading of the ALJ's decision as a whole shows otherwise and also provides the review and analysis of the record evidence relevant to the determination that Plaintiff's impairments did not meet or equal a listing. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)("In this case, the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any listing, including Listing 3.02(A)."). It "would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps

three and five," therefore the Court considers the ALJ's decision as a whole for explanation of her step three determination. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

In the instant case, the ALJ explained why Plaintiff did not meet or medically equal listings 3.03 (asthma), 3.10 (sleep-related breathing disorders) and 4.11 (chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system). First, the ALJ pointed out where Plaintiff lacked the requisite evidence required by those listings. (Tr. at 18.) The supporting evidence is discussed in the following pages of the decision. For example, the ALJ gives explicit attention to Plaintiff's history and frequency of asthma exacerbations and the pulmonary functioning test with Dr. Shelby-Lane and cites both the resultant forced expiratory volume (FEV1) values and diagnoses. (Tr. at 19-20.) The ALJ also cites the history of Plaintiff's bilateral lower extremity swelling with pitting edema. (Tr. at 20.) The ALJ discussed Plaintiff's obesity, for example, noting that he falls into the classification of "extreme obesity" pursuant to National Institutes of Health criteria, citing a doctor's guarded prognosis based on compliance with recommended weight loss, and noting a doctor's observation that Plaintiff had a normal gait yet was slow to maneuver in and out of a chair and on and off of the examination table due to his weight. (Tr. at 19-22, 453.) Noticeably absent from Plaintiff's argument is the allegation that there is specific medical evidence of record which the ALJ failed to consider.

Social Security Ruling 02-1p "does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Rules 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006). Like *Bledsoe*, "[t]he plain language of the ALJ's

13

opinion states that [s]he considered all impairments. The ALJ thus considered all evidence as required by the regulation." *Id.* at 411. Case law in this circuit also states with respect to obesity that "the ALJ need not make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe*, 165 Fed. Appx. at 412. In the instant case, the ALJ has done both: Consideration and discussion of specific evidence regarding Plaintiff's obesity *and* crediting doctors' opinions that considered Plaintiff's obesity. The ALJ expressly considered all of Plaintiff's impairments including obesity and therefore SSR 02-1p was satisfied.

### 2.      Medical Equivalency

Plaintiff argues that SSR 96-6p requires the ALJ to obtain a medical opinion on the issue of medical equivalency under the Listings and that the ALJ has failed to do so. Pursuant to 20 C.F.R. §§ 404.1526(e) and .926(e), for cases at the administrative law judge level, the "responsibility for deciding medical equivalence rests with the administrative law judge." To make such a determination, the ALJ "will consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. . . . [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." *Id.* at §§ .1526(c), .926(c).

Plaintiff relies on *Capshaw v. Comm'r of Soc. Sec.*, 2013 WL 4667544  *16 n.4 (E.D. Mich. 2013)[5], to support his argument that "[t]he great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand." *Id.*   at *16 n.4. *Capshaw* involved a diagnosis of interstitial cystitis, yet the record lacked evidence, testimony or records by any treating physician to address functional limitations related to this impairment.

---

[5]The string cite provided in Plaintiff's brief is a footnote in *Capshaw* providing support for *Capshaw*. (Doc. 12 at 7.)

Like obesity, there is a Social Security Ruling that addresses interstitial cystitis. Unlike the case at bar, the *Capshaw* record lacked "any [physician's] opinion regarding plaintiff's functional limitations at any point in the review and consideration of plaintiff's claim." *Id.* at *15. Two years prior to the ALJ hearing in *Capshaw*, a physician had opined that Capshaw's impairment and condition were nonsevere. There was no further analysis of Capshaw's medical records or interstitial cystitis in the subsequent two years leading up to the hearing. *Id.* at *15 n.2.

"The signature of a State agency medical or psychological consultant on an SSA831–U5 (Disability Determination and Transmittal Form) ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Soc. Sec. Ruling 96-6p; *see also Hicks v. Commissioner of Soc. Sec.*, 105 Fed. Appx. 757, 762 (6th Cir. 2004). Defendant argues that state agency physicians have considered Plaintiff's conditions and concluded that he is not disabled. (Doc. 16.) Plaintiff responds that the medical consultants on which Defendant relies comprise outdated assessments from Plaintiff's prior applications, years before the current ALJ determination, and that the initial denial of the current claim did not contain a medical consultant opinion.

I suggest that this is not a case where the Commissioner has been remiss in obtaining medical opinions and examinations on behalf of Plaintiff. While admittedly some of the opinions and examinations were obtained in connection with prior applications, the overall time span in which they were obtained is not broad and remains relevant to Plaintiff's current application.[6] The

---

[6]It is worth noting that while some of the examination reports and residual functional capacity assessments relied upon by Plaintiff were obtained in connection with prior applications filed closely in time and such evidence was considered in those determinations, the evidence was not the basis of a final decision by an ALJ or the Appeals Council in a prior disability claim. Plaintiff has not shown that the ALJ

evidence taken together provides a longitudinal picture of Plaintiff's impairments and limitations over a time span as follows:

- Cynthia Shelby-Lane, M.D.'s Consultative Examination Report dated January 10, 2007, twenty-three months prior to Plaintiff's current alleged onset date of December 15, 2008 (Tr. at 364-72); provided in connection with Plaintiff's September 6, 2006 application for benefits, denied February 16, 2007. (Tr. at 82.)

- Demetrio Nasol, M.D.'s Physical RFC Assessment of February 14, 2007, twenty-two months prior to Plaintiff's alleged onset date (Tr. at 373-80); provided in connection with the September 6, 2006 application. (Tr. at 82.)

- Abigail Neal, M.D.'s consultative examination report of May 13, 2008 and Physical RFC Assessment of June 1, 2008, less than seven months prior to Plaintiff's alleged onset date (Tr. at 451-56, 457-64); provided in connection with Plaintiff's December 10, 2007 applications, denied June 2, 2008. (Tr. at 83, 84.)

- Dr. Shelby-Lane's Consultative Examination Report of September 16, 2010, just three months prior to the ALJ's decision (Tr. at 473-80); provided in connection with the current application.

All of these documents were admitted into the record by the ALJ at the hearing and considered within the ALJ's decision. (Tr. at 25, 36.)

The record also contains a state agency medical consultant opinion and supporting RFC associated with a February 16, 2007 denial of a prior application. (Tr. at 82, 373-80.) This opinion is dated less than two years prior to Plaintiff's alleged onset and application dates on the

---

cannot consider such prior evidence in her decision. In fact, Acquiescence Ruling 98-4(6) points out that "when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period," with the exception, in the Sixth Circuit, of the required five step analysis findings made in a final decision by an ALJ or the Appeals Council. AR 98-4(6). The undersigned finds nothing to preclude the consideration of prior evidence to the extent that it remains relevant to Plaintiff's condition during the current period.

The last time Plaintiff appeared to have a final adjudicated claim by an ALJ was September 26, 2006, as mentioned in Dr. Nasol's February 14, 2007 Physical Residual Functional Capacity Assessment at Transcript page 375, stating that an "attempt to obtain a copy of the ALJ hearing denial of 9/26/2006 was not successful." (Tr. at 375.) There is no evidence that the denials following that date were ever finally adjudicated by an ALJ. The record also contains an unfavorable August 12, 2003 ALJ decision. (Tr. at 68-81.)

current claim. As set forth above, the ALJ had the benefit of two more consultative examination reports in the period following, including Dr. Shelby-Lane's 2010 report, after the hearing and just a few months prior to the ALJ decision, an important distinction from *Capshaw*. All of the reports and opinions considered Plaintiff's obesity.

It is also relevant that within the abundance of RFC assessments and examinations during this period, there is no evidence providing more severe restrictions or findings than those set forth by the ALJ, nor does evidence show a deterioration in condition necessitating further evaluation or examination. The ALJ pointed out that after December 2007, there was no evidence of further episodes of severe respiratory distress or acute asthma exacerbation requiring emergency treatment or hospitalization and in May 2008 Plaintiff reported that his asthma was "okay" right now. (Tr. at 20, 452.) The ALJ's determination, including equivalence, at step 3 is supported by substantial evidence.

### 3.    Credibility

Plaintiff argues that the ALJ did not properly evaluate his credibility pursuant to 20 C.F.R. 404.1529(c), .929(c) and SSR 96-7p. Contrary to Plaintiff's argument, the ALJ gave very specific reasons for discounting Plaintiff's testimony about the intensity, duration and limiting effects of his symptoms. As required by the Regulations, the ALJ fully explained her credibility determination with respect to Plaintiff's symptoms. 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witnesses's demeanor and credibility." *Walters,* 127 F.3d at 531.

Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41.

Plaintiff argues that the ALJ's statement that "[t]here is no evidence substantiating the claimant's allegations that he is short of breath" directly contradicts medical evidence of record. (Doc. 12 at 17, 17 at 6.). Plaintiff disingenuously cites only a portion of the ALJ's sentence, which in its entirety states, "Although the examining medical sources generally concur that the claimant has severe respiratory impairments, there is no evidence substantiating the claimant's allegations that he is short of breath and needs treatments or rests as frequently as he claims." (Tr. at 21.) The ALJ's finding challenges the frequency with which Plaintiff claims these events occur: shortness of breath" requiring "treatment" or "rest". The ALJ herself noted in the decision the occurrences of shortness of breath on examination, for example, Dr. Shelby-Lane's notation that claimant had "mild shortness of breath" and "inspiratory and expiratory wheezing scattered throughout the lung fields." (Tr. at 20, 474.)

Plaintiff also challenges the ALJ's contention that "no medical source documented the Plaintiff's daytime fatigue." (Doc. 17 at 6.) Again, Plaintiff provides only a few words out of context from the ALJ's complete sentence. Plaintiff's manner of presenting the ALJ's findings to this Court is ironic, given that Plaintiff in his Response Brief accused the Defendant of providing a "deceptive argument to this Honorable Court." (Doc. 17 at 1.) The ALJ's statement in its entirety and in context pointed out the following details:

> Also, there is no indication in the medical evidence of record that the claimant falls asleep three or four times per hour. None of the examining medical sources noted that the claimant fell asleep or appeared sleepy during evaluation *except for one, who noted that the claimant drifted off to sleep several times during an examination.* (Tr. at 21.)

The ALJ then went on to explain that this examination took place at 10 p.m. and shortly before the claimant was admitted to an intensive care unit for acute respiratory distress. (Tr. at 21.)

Plaintiff does not identify evidence of record that contradicts the ALJ's analysis of this issue, when read in its entirety. Plaintiff cites Dr. Shelby-Lane's report at that Plaintiff "continues to suffer from chronic shortness of breath and episodes of narcolepsy." (Doc. 17 at 6, Tr. at 474.) Dr. Shelby-Lane cited these conditions as diagnoses and reported that Plaintiff had a history of these conditions. (Tr. at 474.) This does not, however, contradict the accuracy of the ALJ's analysis. Dr. Shelby-Lane did not report that Plaintiff fell asleep or appeared sleepy during the examination. (Tr. at 473-80.) In fact, the doctor reported that on examination, Plaintiff was "awake, alert and oriented X3." (Tr. at 474.) On examination, Plaintiff had "mild shortness of breath." (Tr. at 474.) Similarly, in 2008, Dr. Neal noted in his diagnoses that Plaintiff has "significant daytime fatigue," yet there is no evidence that the doctor observed Plaintiff falling asleep or that he was sleepy during examination. The doctor reported that Plaintiff was "alert and

oriented times three" on examination. (Tr. at 453.) The ALJ's finding that the record does not support Plaintiff's allegation that he falls asleep three or four times per hour is supported by substantial evidence in the record and the ALJ gave good reasons for his finding.

The ALJ considered the evidence of record in determining the credibility of Plaintiff's statements about the limiting effects of his symptoms. The ALJ considered multiple factors when determining Plaintiff's credibility, including Plaintiff's activities of daily living, including part-time work as a home health aide for his mother, treatment recommendations by his medical providers, including advice to lose weight, responses to treatment, relatively normal findings with respect to gait and extremity strength, and no recent episodes of respiratory distress or asthma exacerbation that required emergency treatment or hospitalization since December 2007. (Tr. at 19, 393; 20, 453; 22, 421-25.). I therefore suggest that the ALJ's credibility determination is supported by substantial evidence in the record.

### 4.    Residual Functional Capacity

Plaintiff argues that the ALJ did not articulate evidence to support the RFC determination as required by SSR 96-8p. Pursuant to SSR 96-8p, the ALJ included evidence within her decision which supports the RFC conclusions, discussed Plaintiff's symptoms, explained where Plaintiff's reported limitations could not be found consistent with the other evidence of record and explained her conclusions. The ALJ's references to both the documents of record and the hearing testimony reveal that all of Plaintiff's limitations which the ALJ found credible were considered in formulating the RFC and the hypothetical question to the VE.

Plaintiff argues that the ALJ failed to account for Plaintiff's "two prescribed breathing treatments, that take him 15 minutes - twice daily," which the VE agreed would not be tolerated

as unscheduled breaks in the workplace. (Doc. 12 at 18, Tr. at 65.) When the ALJ questioned Plaintiff about his days, Plaintiff mentioned taking breaks, but did not identify a breathing treatment he used during the day. (Tr. at 49-50.) Upon questioning from his attorney, Plaintiff reported that he uses a breathing machine and gives himself breathing treatments twice a day for ten to fifteen minutes each time. (Tr. at 59).

There is no evidence in the record of a nebulizing machine or other breathing "treatment" prescribed to Plaintiff, that must occur twice daily, during working hours. During Plaintiff's December 2007 hospitalization, Plaintiff reported that he uses his mother's nebulizing machine "occasionally." (Tr. 416.) It is not mentioned in more recent records, nor was it "prescribed" to Plaintiff. Dr. Shelby-Lane's 2010 examination report, dated after the hearing and prior to the ALJ's decision, and the May 2008 examination report list Plaintiff's current medications as albuterol and a CPAP machine. (Tr. at 453, 473.) At a March 30, 2010 treatment examination, it was reported that Plaintiff was "not taking meds now," and had an Advair inhaler and a CPAP machine he "uses every night." (Tr. 470-71; *see also* Tr. at 419 (reporting in 2007 only home equipment is CPAP machine).)

Similarly, Plaintiff argues that the need to elevate his legs during the day was not included in the ALJ's RFC, and that the VE agreed that elevating both legs in a "type of reclining position" would probably not be tolerated at work. (Tr. at 64.) Like the daytime "breathing treatments," above, Plaintiff has cited no medical support for the need to elevate his legs as such. No treating, examining or consulting doctor has either made such recommendation or otherwise noted Plaintiff's complaint of the need for same. (Tr.  451-56, 457-64, 465-72, 473-80.). Plaintiff's

2010 complaints of leg swelling for which he sought medical treatment occurred in part when he was out of medication and were improved with Lasix. (Tr. at 465-72.)

The ALJ's RFC limiting Plaintiff to lifting no more than ten pounds and standing no more than two hours effectively limited Plaintiff to performing a range of sedentary work.[7] (Tr. at 62-63.) The ALJ accommodated Plaintiff's testimony throughout the RFC.  The ALJ gave only some weight to Dr. Jackson's 2008 RFC assessment.  (Tr. at 22, 457-64.) Indeed, compared to Dr. Jackson, the ALJ severely restricted the weight which Plaintiff could lift, limiting him to no more than 10 pounds, which is not inconsistent with Plaintiff's testimony that he can lift no more than 15 pounds without dropping it. (Tr. at 18, 21, 49.) On examination, Plaintiff was described as slow to change position from seated to standing or on and off an examining table, due to his obesity. (Tr. at 20, 453). The RFC limited Plaintiff to no more than occasional postural activities such as kneeling, crouching, crawling, bending, climbing or squatting, which is somewhat more restrictive than Dr. Jackson's RFC. (Tr. at 18.) The ALJ's limitations on upper extremity pushing and pulling are consistent with Dr. Jackson's RFC and more restrictive where the ALJ also limited reaching to no more than 2/3 of the workday and no operation of foot controls. (Tr. at 18.)

The ALJ also relied Dr. Shelby-Lane's 2010 report. Dr. Shelby-Lane noted Plaintiff's need for long-term care for his respiratory conditions and recommended that he be under the care of a specialist. (Tr. at 474.) Plaintiff reported to Dr. Shelby-Lane that he has shortness of breath with walking, steps, exertion, and exposure to pollutants, toxins and smoke. (Tr. at 473) Plaintiff

_____

[7]
    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

testified that due to his asthma he cannot be around smoking or chemicals. (Tr. at 46.) The ALJ accommodated Plaintiff's self-reported symptoms with a severe limitation to no more than two hours of standing in a day (which necessarily limits walking in sedentary jobs), a limitation on climbing and the need for an environment without concentrated exposure to dust, fumes, chemicals or airborne irritants.

The ALJ's RFC was supported by substantial evidence in the record. In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which she finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ properly relied on the VE's testimony in response to the hypothetical question to find that Plaintiff can perform a significant number of jobs in the economy. The ALJ's finding at step five is supported by substantial evidence in the record.

### G.    Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (doc. 16) should be granted, that of Plaintiff (doc. 12) denied and the decision of the Commissioner affirmed.

### III.    <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v.*

*Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ <em>Charles E. Binder</em>

CHARLES E. BINDER<br>United States Magistrate Judge

Dated: June 16, 2014